# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 17, 2006       Decided February 17, 2006

No. 04-5358

UNITED STATES OF AMERICA,
APPELLEE

v.

BRITISH AMERICAN TOBACCO AUSTRALIA SERVICES, LTD,
BATAS,
APPELLANT

———

No. 05-5129

UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT
OF JUSTICE,
APPELLEE

v.

BRITISH AMERICAN TOBACCO AUSTRALIA SERVICES, LTD,
BATAS,
APPELLANT

———

Appeals from the United States District Court
for the District of Columbia
(No. 99cv02496)

*Jack McKay* argued the cause for appellant. With him on the briefs were *Barry H. Gottfried* and *Alvin Dunn*.

*Mark R. Freeman*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the briefs were *Peter D. Keisler*, Assistant Attorney General, *Mark B. Stern* and *Alisa B. Klein*, Attorneys, *Sharon Y. Eubanks*, Director, *Stephen D. Brody*, Deputy Director, and *Frank J. Marine*, Senior Litigation Counsel.

Before: SENTELLE, RANDOLPH and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

SENTELLE, *Circuit Judge*: Intervenor British American Tobacco Australia Services, Ltd. ("BATAS") appeals from two orders of the United States District Court for the District of Columbia. First, BATAS appeals from Order #670, which denied its motion for expanded intervention as untimely. Second, BATAS appeals from Order #896, which overruled certain trial testimony objections made by British American Tobacco (Investments) Ltd. ("BATCo"). Because the District Court did not abuse its discretion by finding BATAS's motion for intervention untimely, we affirm Order #670; consequently, we also dismiss BATAS's appeal of Order #896 for lack of standing.

I.

These interlocutory appeals are the latest in a series of appeals to this court arising out of a civil RICO action filed in 1999 by the United States against several tobacco companies, including BATCo. *See United States v. Philip Morris USA, Inc.*, 396 F.3d 1190 (D.C. Cir. 2005); *United States v. British Am.*

*Tobacco (Invs.) Ltd.*, 387 F.3d 884 (D.C. Cir. 2004); *United States v. Philip Morris Inc.*, 347 F.3d 951 (D.C. Cir. 2003) ("*Philip Morris II*"); *United States v. Philip Morris Inc.*, 314 F.3d 612 (D.C. Cir. 2003) ("*Philip Morris I*"). In the underlying suit, the government did not sue appellant BATAS, which prior to 1999 was a wholly owned subsidiary of BATCo. *British Am. Tobacco*, 387 F.3d at 886. At that time, BATAS was known as W.D. & H.O. Wills ("Wills"). *Id.*

BATAS's appeals concern its attempts to protect its claims of Australian legal professional privilege, American attorney–client privilege, and work-product privilege in Wills-era information. In particular, BATAS regards two documents as especially important: the Foyle Memorandum and the Gulson Affidavit. As outside counsel for BATCo and its subsidiary Wills, Andrew Foyle authored the Foyle Memorandum in 1990. The Memorandum provided the companies with advice regarding "Wills's document-retention polic[ies]" in preparation for potential litigation. *Id.* The Gulson Affidavit recounts confidential legal advice and describes Wills's document retention policies. Frederick Gulson, in-house counsel to Wills in 1989 and 1990, executed the Affidavit as part of a 2003 Australian legal proceeding involving BATAS.

Seeing the documents as relevant to its case against BATCo, the government sought to use them in its RICO action. To protect its own privilege interests, BATAS moved in 2003 to intervene in the underlying suit "for the limited purpose of asserting and, if necessary, litigating privileges it holds in" the Foyle Amendment and Gulson Affidavit, among other documents. The District Court granted BATAS's limited, documentary intervention in Order #449, issued on December 5, 2003. Under the terms of the intervention and at BATAS's request, therefore, BATAS is not a full party to the suit.

In March 2004, the government filed its expected witness list, naming Gulson as a potential trial witness. The witness list summarized Gulson's expected testimony as follows:

> Fred Gulson is expected to testify regarding BATCo's . . . document management and control policies and conduct including efforts to suppress information by, among other things, destroying and concealing documents to keep them from introduction into judicial proceedings and to prevent their publication in the United States and abroad.

By referring to BATCo's document management, the summary directly implicates the subject matter of both the Foyle Memorandum and the Gulson Affidavit. Though aware that Gulson's expected testimony concerned subjects in which it claimed privilege, BATAS waited until September 1, 2004—a matter of days before the scheduled start of trial—to file a "Motion to Protect Its Privilege Rights in Deposition and Trial Testimony." On September 30, 2004, the District Court issued Order #670, denying this motion for expanded intervention as untimely.

The government subsequently produced Gulson for deposition and trial testimony. During Gulson's February 17, 2005, trial appearance, the government read publicly available portions of the Foyle Amendment to him and asked him to confirm the statements. BATCo objected on privilege grounds to parts of Gulson's testimony. BATAS did not join BATCo's objections, nor did it raise its own objections. In Order #896, the District Court overruled most of the objections, thus allowing much of Gulson's testimony into the record.

Trial began in September 2004 and ended on June 9, 2005. The District Court has not yet issued a final judgment. BATAS timely filed its notice of appeal of Order #670 on October 5,

2004.  It timely appealed Order #896 on March 30, 2005.

II.

In Order #670, the District Court denied BATAS's motion for expanded intervention as "clearly untimely" under Federal Rule of Civil Procedure 24(a).  A prospective intervenor "claim[ing] an interest relating to the property or transaction which is the subject of the action" may intervene as of right if "the disposition of the action may as a practical matter impair or impede [its] ability to protect that interest, unless [its] interest is adequately represented by existing parties."  FED. R. CIV. P. 24(a)(2).  As a threshold matter, though, Rule 24 requires prospective intervenors to file a "timely application."  We have previously stated that

> timeliness is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case.

*United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980).  We review the District Court's denial of intervention for untimeliness under the abuse of discretion standard.  *NAACP v. New York*, 413 U.S. 345, 366 (1973); *Building & Const. Trades Dept. v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994). Having considered "all the circumstances," we hold that the District Court did not abuse its discretion.

The District Court first found that BATAS had adequate notice of the possible testimony concerning matters in which it claimed privilege almost six months—and possibly as much as a year—before moving to expand its intervention.  Specifically,

the District Court noted that the Gulson Affidavit had become public information by September 12, 2003, and that the government had listed Gulson as a witness by March 15, 2004. BATAS, though, did not act until September 1, 2004. Second, the District Court found that a late intervention "would further delay and complicate the massive trial" scheduled to begin only weeks after BATAS filed its motion.

In its abbreviated timeliness argument, BATAS contends that it could not have objected on privilege grounds until Gulson's testimony occurred either at deposition or trial and therefore need not have intervened earlier. Furthermore, BATAS claims that *SEC v. Lavin*, 111 F.3d 921, 931 (D.C. Cir. 1997), required it to wait until Gulson's testimony provided a "concrete threat" to its privileges. The issue, though, is not the timeliness of potential *objections* but the timeliness of its *intervention*. *Lavin*, therefore, is not germane to the issue of intervention. Furthermore, BATAS misreads *Lavin*, which merely states the unremarkable proposition that privilege holders need not prematurely assert privilege. *Id.* ("[W]e know of no case . . . that requires a privilege holder to engage in a preemptive strike to prevent further disclosure of involuntarily disclosed, privileged materials . . . ."). Our cases do not require privilege holders to forego intervention or sit on their rights as BATAS suggests. *See, e.g.*, *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989) (stating "privilege must be jealously guarded").

In lieu of further argument on timeliness, BATAS directs an inordinate amount of attention at a different issue—whether it has waived its privileges. Claiming the issue is before this court, BATAS singles out one sentence in the District Court's opinion: "BATAS has clearly waived its right to assert any privilege over the subject matter covered in [Gulson's] affidavit." By vehemently contending that it has not waived its privileges, BATAS tilts at windmills: The issue before us is not waiver, nor

even privilege itself. All we have before us is the timeliness of BATAS's motion to intervene. The validity of privilege goes only to the prospective intervenor's "interest," as required by Rule 24(a)(2). Courts reach the other elements of Rule 24(a) only after the threshold question of timeliness. *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 129 (D.C. Cir. 1972) ("[T]imeliness is a prerequisite to any claim for intervention under Rule 24 . . . ."). Having resolved its analysis without passing that threshold, the District Court mentioned waiver only in the context of its broader discussion of timeliness. Therefore, we do not address whether BATAS waived its privileges because we affirm the District Court's ruling on timeliness.

As to the actual question before us, we agree with the District Court's findings on timeliness. The District Court correctly noted that before moving to expand its intervention BATAS allowed nearly six months to pass after receiving the government's witness list. Furthermore, BATAS's motion came almost a year after the contents of the Gulson Affidavit became publicly available. Consequently, BATAS received multiple early warnings of danger to its privilege. It knew the contents of the documents—and therefore what privileged information might be disclosed—and it knew the government's plans to call Gulson to the stand, along with the subject matter of his expected testimony. On these facts, BATAS had a reasonable expectation of potential disclosure of information in which it claims privilege well before it filed its motion for expanded intervention.

Although elapsed time alone may not make a motion for intervention untimely, *see United Mine Workers*, 473 F.2d at 129, other facts support the District Court's ruling. BATAS had already intervened once in the suit. Unquestionably, it could have requested a broader intervention initially or upon receiving the government's witness list (or any time in between or thereafter). BATAS's dilatory conduct is, therefore, all the more

inexcusable considering that its motion to intervene came virtually on the eve of trial. The District Court's forecast of a complicated trial, spanning nearly nine months, has been borne out; neither it, nor the parties to the suit, should be hindered by BATAS's delay. On such facts, it is impossible to say the District Court abused its discretion.

### III.

BATAS also appeals Order #896, in which the District Court overruled most of BATCo's objections to Gulson's trial testimony. We begin our inquiry with the issue of standing. *Wyoming Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 47 (D.C. Cir. 1999) ("Because Article III courts are courts of limited jurisdiction, we must examine our authority to hear a case before we can determine the merits."). Because the District Court properly denied BATAS's motion for expanded intervention, BATAS lacks standing to appeal Order #896.

We have stated many times that failed intervenors may not appeal District Court actions to which they are not a party. *See, e.g., Alternative Research & Dev. Found. v. Veneman*, 262 F.3d 406, 411 (D.C. Cir. 2001) ("[B]ecause the district court correctly denied intervention, NABR is not a party to the action and lacks standing to appeal . . . ."). As we have already held, the District Court did not abuse its discretion by denying BATAS's motion to expand its intervention to testimonial evidence. Necessarily, then, BATAS is not a party to the orders concerning Gulson's testimony and cannot appeal them. *Moten v. Bricklayers, Masons & Plasterers Int'l Union of Am.*, 543 F.2d 224, 227 (D.C. Cir. 1976).

BATAS argues that its initial intervention, granted in Order #449, provides it with an alternative basis to bring this appeal. We disagree. BATAS requested intervention only as to its

possible privilege in documents and emphasized to the District Court the limited nature of its intervention. The District Court accordingly granted only a limited intervention, which did not extend to testimonial evidence. BATAS's attempt to expand its intervention demonstrates that it too believed it could not assert privilege over testimonial evidence without a broader intervention. Furthermore, BATAS did not join BATCo's objections to Gulson's testimony, nor did it attempt to raise its own. *Cf. Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1002 (D.C. Cir. 1996) (failure to object waives right to raise objection on appeal). BATAS cannot now—as a nonparty who did not object—appeal Order #896 overruling BATCo's objections.

## IV.

For the above reasons, we affirm the District Court's Order #670 and dismiss BATAS's appeal of Order #896 for lack of standing.